UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GRANITE MUSIC CORPORATION,
COOLWELL MUSIC,                                              **REPORT**
TROUP LONDON MUSIC, and                                       **and**
UNIVERSAL-POLYGRAM INTERNATIONAL                      **RECOMMENDATION**
 PUBLISHING, INC.,

                                                           **09-CV-00872A(F)**

                                      Plaintiffs.

                    v.

CENTER STREET SMOKE HOUSE, INC.,
CREGG S.  PAUL, and
SCOTT R.  PAUL,

                                      Defendants.

_____

APPEARANCES:          HANCOCK ESTABROOK, LLP
                      Attorneys for Plaintiffs
                      MICHAEL J. SCIOTTI, and
                      ROBERT C. WHITAKER, JR., of Counsel
                      1500 AXA Tower 1
                      100 Madison Street
                      Syracuse, New York  13202

                      DAMON MOREY LLP
                      Attorneys for Plaintiffs
                      MICHAEL LAWRENCE AMODEO, of Counsel
                      200 Delaware Avenue
                      Suite 1200
                      Buffalo, New York  14202

                      THE OKAY LAW FIRM
                      Attorneys for Defendants
                      MEHMET K. OKAY, of Counsel
                      P.O. Box 622
                      Batavia, New York  14020

## <u>JURISDICTION</u>

        This case was referred to the undersigned by Honorable Richard J. Arcara on

December 9, 2009, for pretrial matters including report and recommendation on

dispositive motions.  The matter is presently before the court on Plaintiff's motion filed
November 15, 2010, seeking a default judgment (Doc. No. 34).

## BACKGROUND

Plaintiffs Granite Music Corporation ("Granite Music"), Coolwell Music ("Coolwell
Music"), Troup London Music ("Troup London Music"), and Universal-Polygram
International Publishing, Inc. ("Universal-Polygram") (together, "Plaintiffs"), commenced
this copyright infringement action on October 9, 2009, alleging that on May 17-18, 2008,
Defendants Center Street Smoke House, Inc. ("the Smokehouse"), Cregg S. Paul
("Cregg Paul"), and Scott R. Paul ("Scott Paul") (together, "Defendants"), presented
three public performances of musical compositions for which the copyrights are owned
by Plaintiffs, in violation of the Copyright Act, 17 U.S.C. § 501 *et seq*. ("the Act").
Plaintiffs seek to recover statutory damages, available under § 504 of the Act, for each
of three alleged copyright infringements, and costs, including attorney damages.  On
December 7, 2009, Defendants filed an answer (Doc. No. 12), generally denying the
salient allegations of the Complaint and asserting 12 Affirmative Defenses including,
*inter alia*, Plaintiffs suffered no damages as a result of Defendants' alleged copyright
infringement activity (Second Affirmative Defense), Defendants' actions were
commercially reasonable and lawful (Third Affirmative Defense), Plaintiffs' asserted
copyrights and their respective registrations are invalid (Eighth and Ninth Affirmative
Defenses), payment (Eleventh Affirmative Defense), and failure to join necessary party
(Twelfth Affirmative Defense).

The parties to this action engaged in four mediation sessions pursuant to this

District's Alternative Dispute Resolution plan, as a result of which Defendants agreed to withdraw their Answer and admit liability.  On June 23, 2010, the parties filed the fully executed Stipulation to Withdraw Defendants' Answer with Prejudice and Admit Liability (Doc. No. 30) ("Stipulation"), in which Defendants state Defendants "hereby admit liability as to all allegations contained in the Complaint . . . ."   Stipulation at 1.  The parties further stipulated that Plaintiff would seek a default judgment against Defendants requesting statutory damages, attorneys' fees and costs, and a permanent injunction against Defendants.  *Id.*  at 2.  On July 6, 2010, Plaintiffs filed a Request for Entry of Default (Doc. No. 31), which was granted on July 23, 2010 when the Entry of Default against Defendants was filed by the Clerk of the Court (Doc. No. 32).

On November 15, 2010, Plaintiffs filed the instant motion (Doc. No. 34) ("Plaintiffs' motion"), seeking entry of a default judgment against Defendants.  Plaintiffs' motion is supported by the attached Affidavit of Michael J. Sciotti, Esq. (Doc. No. 34-1) ("Sciotti Affidavit"), with attached exhibit A ("Sciotti Affidavit Exh. A"), a Memorandum of Law in Support of Plaintiffs' Motion for a Default Judgment (Doc. No. 34-2) ("Plaintiffs' Memorandum"), with attached exhibits 1 through 8 ("Plaintiffs' Exh(s). __"), and the Declaration of Douglas Jones in Support of Plaintiffs' Motion for Default Judgment (Doc. No.  34-3) ("Jones Declaration"), with attached exhibits A though D ("Jones Declaration Exh(s). __").  In opposition to Plaintiffs' motion, Defendants filed the Answering Affirmation of Mehmet K. Okay, Esq. (Doc. No. 38) ("Okay Affirmation"), on January 10, 2011, and the Affidavit of Cregg S. Paul (Doc. No. 39) ("Cregg Paul Affidavit"), on January 16, 2011.

On January 21, 2011, Plaintiffs filed the Affidavit of Michael J. Sciotti, Esq. (Doc.

No. 40) ("Sciotti Reply Affidavit"), and Plaintiffs' Reply Memorandum in Support of Their
Motion for a Default Judgment (Doc. No. 41) ("Plaintiffs' Reply").  Oral argument was
deemed unnecessary.

Based on the following, Plaintiffs' motion for entry of a default judgment should
be GRANTED.

## FACTS[1]

Granite Music, Coolwell Music, Troup London Music, and Universal-Polygram,
Plaintiffs to this action, are songwriters or music publishers, as well as members of
American Society of Composers, Authors and Publishers ("ASCAP"), a performing
rights licensing organization to which Plaintiff have granted a nonexclusive right to
license non-dramatic public performances of the musical compositions to which
Plaintiffs own the copyrights.  ASCAP offers to providers of entertainment, including
radio and television stations, restaurants, and nightclubs, licenses permitting
copyrighted musical compositions within ASCAP's repertoire to be lawfully performed in
such establishments.  ASCAP routinely contacts owners and operators of entertainment
establishments where ASCAP's members' copyrighted music is performed to advise the
owners and operators of the obligation imposed under federal copyright law to obtain
the proper license prior to performing such music.  Because Plaintiff's licensing rights to
the musical compositions within their repertoire is non-exclusive, users of such musical
compositions who do not obtain a license from ASCAP can still lawfully perform such

---

[1] Taken from the pleadings and motion papers filed in this action.

musical compositions by separately negotiating with each copyright owner for permission to perform such works.

Defendant Smokehouse is a business establishment that provides public entertainment, accommodation, amusement and refreshments.  The Smokehouse is owned and operated by Defendants Cregg Paul and Scott Paul who are financially benefitted by the entertainment provided at the Smokehouse.

ASCAP maintains business records for each establishment ASCAP has contacted to license or attempted to license, including Defendants.  In March 2002, ASCAP made its first of 57 contacts with Defendants to offer Defendants an ASCAP licensing agreement.  In subsequent contacts in person, by letters, and telephone conversations, ASCAP representatives repeatedly advised Defendants of Defendants' obligations and liability under the Copyright law, and Defendants occasionally tendered various payments to ASCAP, but continued to refuse to sign the requisite ASCAP licensing agreement.  In particular, Defendants tendered to ASCAP three checks over a five-year period, including $ 674.50 in 2002, $ 2,504.14 in 2004, and $ 4,067.37 in 2007, for a total of $ 7,246.  Upon receipt of each check, ASCAP contacted Defendants and advised that ASCAP could not cash the checks without an ASCAP licensing agreement signed by Defendants.  ASCAP further advised that without an ASCAP licensing agreement, Defendants were not authorized to perform any of the copyrighted musical compositions within ASCAP's repertoire, and any such performance would constituted copyright infringement.  Plaintiffs maintain that the signed licensing agreements are required because without such agreements, ASCAP would be unable to keep track of its licensees and the terms of license issued to each.  Given

Defendants' continued refusal to enter into an ASCAP licensing agreement, Plaintiff's returned each of the three checks to Defendants, accompanied by letters explaining that unless Defendants executed an ASCAP licensing agreement, Plaintiffs could not cash the checks.  Accordingly, ASCAP has never received any payment for a licensing agreement from the $ 7,246 in checks Defendants tendered to ASCAP.  The fees on the licensing agreement ASCAP repeatedly offered Defendants between March 2002 through 2010 total $ 10,877.40.

ASCAP arranged for independent investigator Lawrence DeMarco ("DeMarco"), to attend a public musical performance given by "Billy Parker and The Silvers" ("the band") at the Smokehouse.  The band was not employed by Defendants, but was an independent contractor.  The musical performance, which commenced in the evening of May 17, 2008 and continued into the early morning of May 18, 2008, included three compositions within ASCAP's repertoire, "Stars on the Water," "Route 66" (a/k/a "Get Your Kicks on Route 66"), and "Tulsa Time."  The copyrights for these three compositions are respectively owned by Plaintiffs Granite Music, Troup London Music, and Universal-Polygram.   Specifically, in addition to other musical compositions not at issue in the instant case, the band performed "Route 66" on May 17, 2008 at 9:31 P.M., Tulsa Time on May 17, 2008 at 10:50 P.M., and Stars on the Water on May 18, 2008 at 12:18 A.M. ("the copyright infringements").  When Plaintiffs informed Defendants of these specific incidents of copyright infringement, Defendants continued to refuse to execute an ASCAP licensing agreement to resolve the matter, and Plaintiffs commenced the instant action.

The next afternoon, May 18, 2008, Defendants hosted a benefit concert for the

Diabetes Association ("the diabetes benefit").  Defendants donated all food and beverage receipts generated during the diabetes benefit to the Diabetes Association.

## DISCUSSION

**1.    Standing**

Although not raised by the parties, the court, in the interests of clarity and completeness, first addresses whether Plaintiffs have standing to bring this action. "The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persona who have been granted *exclusive* licenses by owners of copyrights."  *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982) (italics added) (citing 3 Nimmer on Copyright § 12.02 at 12-25 (1982)).  A non-exclusive licensee does not have standing to commence a copyright infringement action.  *Bertolino v. Italian Line*, 414 F.Supp. 279, 284 (S.D.N.Y. 1976) ("In a suit under the copyright laws it is axiomatic that only the proprietor of the copyright has standing to sue for its infringement.").  Defendants have not disputed that Plaintiffs own the copyrights for the subject musical compositions, Complaint ¶ 3, and that Plaintiffs have granted ASCAP, a performing rights licensing organization, a nonexclusive right to license non-dramatic public performances of Plaintiffs' copyrighted musical compositions.  Plaintiff's Memorandum at 1.

In the instant case, because Plaintiffs are the owner of the copyrights at issue in this action, Plaintiffs have standing to sue in their own names.  Further, because ASCAP's right to license public performances of the musical compositions within its repertoire is nonexclusive, ASCAP is without standing to bring this action.

2.     **Default Judgment**

Plaintiffs seek entry of a default judgment, awarding statutory damages for each

of the three copyright infringements, *i.e.*, the performance on May 17-18, 2008, of three

musical compositions within ASCAP's repertoire without obtaining the required license

for such compositions, the costs of this action, including reasonable attorneys' fees,

and a permanent injunction against Defendants' future performance of such

compositions.  Plaintiffs' Memorandum at 8-16.  Plaintiffs' motion for entry of a default

judgment against Defendants is predicated on the Stipulation by which Defendants

withdrew their Answer and admitted liability, thereby admitting to willfully violating

federal copyright law by presenting a musical performance at the Smokehouse on May

17-18, 2008, at which three copyrighted musical compositions within ASCAP's

repertoire were performed, despite Defendants' continued failure to execute a licensing

agreement with ASCAP to authorize lawful performance of the copyrighted works.  *Id*.

at 5-7.

In opposition to Plaintiffs' motion, Defendants do not challenge their admission of

liability in the Stipulation but, rather, maintain the Complaint fails to allege Defendants

derived any financial benefit as a result of the copyright infringements.  Okay

Affirmation ¶¶ 10-32.  Defendants also maintain that despite stipulating to the

allegations of the Complaint, Defendants have not admitted that the copyright

infringements were willful, which is a legal conclusion necessary to the determination of

both statutory damages and the award of costs, including attorney's fees.  *Id*., ¶¶ 33-48.

Alternatively, Defendants request an evidentiary hearing to determine the issues of

willfulness and costs, including attorneys' fees.  *Id*. ¶  49.

8

In further support of their motion, Plaintiffs argue that Defendants have not only stipulated to withdraw their Answer, but also to liability with regard to the copyright infringements alleged in the Complaint.  Plaintiffs' Reply at 1-4.  Plaintiffs further maintain that Defendants are not innocent infringers, such that the minimum statutory damages are insufficient to defer future infringing acts, and supporting Plaintiffs' request for a permanent injunction.  *Id*. at 4-8.  Finally, Plaintiffs argue that because Defendants' copyright infringements were willful, Plaintiffs are entitled to the costs and attorneys' fees sought by Plaintiffs, for which no evidentiary hearing is necessary.  *Id*. at 8-10.

The Federal Rules of Civil Procedure provide a two-step process for obtaining a default judgement in federal district court.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir.  2005).  First, the party seeking a default judgment must obtain a default by bringing to the court's attention the fact that the party against whom affirmative relief is sought has failed to appear or to otherwise defend against the action, "and Rule 55(a) empowers the clerk of the court to enter a default against a party who has not appeared or defended."  *Id*.  *See also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 n. 11 (2d Cir. 1995) (noting "the 'entry of a default is largely a formal matter and is in no sense a judgment by default.'" (quoting 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 55.03[2], at 55-21 (2d ed.  1994))).  In the instant case, after filing on June 23, 2010, the Stipulation in which Defendants withdrew their Answer with prejudice and admitted liability with regard to the copyright infringements, Plaintiffs filed on July 6, 2010, their Request for Entry of Default, which was granted on July 23, 2010 (Doc. No. 32).  As such, Plaintiffs have completed the first step to obtain a default judgment.

"Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)."  *Green*, 420 F.3d at 104.  Upon entry of default, all the well-pleaded allegations of the complaint are accepted as true.  *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  The court, however, must still determine whether, based on the complaint's well-pleaded allegations, the complaint states a claim upon which relief can be granted.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (holding "a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); *see also Garden City Boxing Club, Inc. v. Giambra*, 2004 WL 1698633, at * 1 (W.D.N.Y. July 27, 2004) ("Prior to entering default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action.").  "When the plaintiff's claims clearly lack merit, denial of a default judgment is the proper course of action for a court."  MOORE'S FEDERAL PRACTICE § 55.31 (3d ed. 2011).  A default judgment entered on the well-pleaded allegations of the complaint establishes a defendant's liability.  *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  Upon establishing a defendant's liability, the only remaining question is whether the plaintiff has provided adequate evidentiary support for the damages sought.  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

Fed.R.Civ.P. 55(b) provides that upon application to the court by the party entitled to a default judgment, the court may enter a judgment by default against the defaulting party.  Because the damages Plaintiffs seek in the instant case are not a sum

certain, Rule 55(b)(2) "requires a party seeking judgment by default to apply to the court for entry of a default judgment." *Id.* It is within the sound discretion of the District Court whether to enter a default judgment pursuant to Rule 55(b)(2), based on the assessment of the circumstances of the case and an evaluation of the parties' credibility and good faith. *Shah v. New York State Department of Civil Service*, 168 F.3d 610, 615 (2d Cir. 1999) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

In considering a motion for default judgment, the District Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 95. Specifically, the court considers "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders District Council v. M & M Contracting & Consulting*, 193 F.R.D. 112, 114-15 (S.D.N.Y. 2000). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. Nor is the court bound by the Stipulation as to matters of law. *Becker v. Poling Transportation Corporation*, 356 F.3d 381, 390 (2d Cir. 2004) (citing *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 99 (1991)).

A plaintiff asserting copyright infringement may be granted a default judgment where the defendant has failed to answer or to move against the Complaint. *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 659 (S.D.N.Y. 1996). Here,

Defendants have not moved against the Complaint and, by withdrawing their Answer, have failed to answer.  Accordingly, Plaintiffs may be granted the default judgment they seek, provided the well-pleaded allegations of the Complaint establish the alleged copyright violations.  "[P]erformances, made without a license or authorization from the copyright owners, constitute copyright infringements in the works."  *Broadcast Music, Inc.*, 919 F.Supp. at 659 (citing cases).  To prove a copyright infringement claim based on a live performance requires a plaintiff establish "(1) originality and authorship; (2) compliance with the formalities of the Copyright Act; (3) their ownership of the copyrights involved; (4) the defendant's public performance of the compositions for profit; and (5) the latter's failure to obtain permission from the plaintiffs or their representatives for such performances."  *Shapiro, Bernstein & Co., Inc. v. Club Lorelei, Inc.*, 1995 WL 129011, at * 2 (W.D.N.Y. Mar. 14, 1995) (citing *Bourne Co. v.  Hunter Country Club, Inc.*, 990 F.3d 934, 938 n. 9 (7th Cir.), *cert. denied*, 510 U.S. 916 (1993)).

Further, "[c]opyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable.'"  *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 596 F.Supp. 28, 33 (S.D.N.Y. 1984) (quoting *Screen Gems-Columbia Music, Inc. v. Metlis and Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972)).  Joint and several liability has been imposed on defendants who have promoted or induced the infringing acts of another, despite the absence of the defendant's actual knowledge of the copyright violation. *Id*. (citing *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); and *MCA Inc. v. Wilson*, 425 F.Supp. 443, 456 (S.D.N.Y. 1976), *aff'd*, 677 F.2d 180 (2d Cir. 1981)).  As such, a defendant may be held liable for copyright infringement "if he has the right and ability to

supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Publishing Corp.*, 443 F.2d at 1162.

In the instant case, Defendants, in opposing the entry of a default judgment, dispute only the fourth element of Plaintiffs' case, arguing the Complaint fails to allege that Defendants' derived any financial benefit from the three copyright infringing performances.  Okay Affirmation ¶ 10.  Defendants further maintain that the Smokehouse was the venue for a Diabetes Association benefit held in the afternoon of Sunday, August 18, 2008, with all food and beverage receipts generated during said benefit donated to the Diabetes Association, such that Defendants did not derive any profits from the benefit.  In further support of their motion, Plaintiffs reference the Complaint in which Plaintiffs allege that because Defendant Smokehouse is a business establishment that provides entertainment, Complaint ¶ 4, and given that Defendants Cregg and Scott Paul are officers and principals of the Smokehouse, Defendants derived financial benefit from the performance of the three musical compositions on May 17 and 18, 2008.  Complaint ¶ 5 and attached Schedule "A."  Plaintiffs further rely on the statements made by ASCAP General Licensing Department Manager of Litigation Services Douglas Jones ("Jones") who, upon reviewing the reports prepared by DeMarco after investigating the Smokehouse performance on May 17-18, 2008, stated that the three copyright infringements for which Plaintiffs seeks to recover damages occurred during the late evening of May 17, 2008, and ended early in the morning of May 18, 2008, well before the Diabetes Association benefit commenced later in the day on May 18th.  Plaintiffs' Reply at 2-3 (citing Jones Declaration ¶¶ 19-21 and Exh. C).  The court, however, considers only the Complaint's "well-pleaded

allegations" in considering whether to enter default judgment. *Au Bon Pain Corp.*, 653 F.2d at 65; *Garden City Boxing Club, Inc.*, 2004 WL 1698633, at * 1. Accordingly, because the times the three copyright infringements occurred are not alleged in the Complaint, the court does not consider such facts as established based on Defendants' execution of the Stipulation.

Nevertheless, Defendants by "admit[ting] liability as to all allegations contained in the Complaint," have admitted to the three copyright infringements on May 17 and 18, 2008, as well as "at other times prior and subsequent thereto." Complaint ¶¶ 11-13 and Schedule "A" (alleging Defendants, on May 17 and 18, 2008, infringed the copyrights for the musical compositions Stars on the Water, Tulsa Time, and Route 66, because such performances were unauthorized given that Defendants did not obtain a license for the performance despite numerous contacts by ASCAP informing Defendants of their liability under Copyright Law). Defendants admitted having derived financial benefit from such infringement activity. Complaint ¶ 5 (alleging Defendants derived financial benefit from the alleged copyright infringements). Furthermore, given that Defendants Cregg and Scott Paul admit to being owners and principals of the Smokehouse, with authority to supervise the three copyright infringements, Complaint ¶¶ 4-5, all Defendants are jointly and severally liable for the infringing acts. *Gershwin Publishing Corp.*, 443 F.2d at 1162. Defendants' belated reliance on the Diabetes Association benefit in an attempt to avoid liability in this case strikes the court as an unworthy afterthought.

As such, Plaintiffs' motion should be GRANTED as to the request for entry of a default judgment finding Defendants liable for the three copyright infringements. The

court thus addresses to what relief Plaintiffs are entitled based on Defendants' infringing activities.

### 3.    Copyright Infringement Remedies

Plaintiffs seeks as relief in connection with the default judgment statutory (1) a permanent injunction prohibiting Defendants from future infringing performances; (2) statutory damages pursuant to § 504(c)(1) in the amount of $ 10,000 for each of the three copyright infringements, for a total of $ 30,000 in statutory damages; and (3) based on a finding Defendants' infringement was willful, an award of costs, including attorneys' fees, incurred in connection with this action.  Plaintiffs' Memorandum at 8-16. In opposition, Defendants maintain that they were only innocent infringers, thus urging the court to award no more than the minimum statutory damages available under § 504(c)(1), that no permanent injunction is necessary, and that Plaintiffs cannot establish the necessary willfulness to support an award of costs, including attorneys' fees.  In further support of their request for relief, Plaintiffs maintain that Defendants, by executing the Stipulation, have admitting their copyright infringement conduct was willful, and the record establishes Defendants are not innocent infringers, Plaintiffs' Reply at 4-6; the issue of willfulness is irrelevant to the award of statutory damages under § 504(c)(1), *id.* at 6-8; and that the amount of costs, including attorneys' fees, is justified. *Id.*  at 8-9.

### A.    Permanent Injunction

Plaintiffs seek a permanent injunction prohibiting Defendants from further

15

infringing performances.  Plaintiffs' Memorandum at 8-9.  Defendants maintain no such injunction is necessary because Plaintiffs, who have not suffered irreparable harm as a result of the copyright infringements, have an adequate remedy at law.  Okay Affirmation ¶¶ 50.  In further support of their request for a permanent injunction, Plaintiffs argue that recent case law from this court supports such request.  Plaintiffs' reply at 6.

"Pursuant to 17 U.S.C. § 502, a permanent injunction may issue on such terms as the court deems 'reasonable to prevent or restrain infringement of a copyright.'" *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (quoting 17 U.S.C. § 502).  A permanent injunction has been found "appropriate when infringement by unauthorized public performances has been proven."  *Gladys Music v. Bilbat Radio, Inc.*, 2007 WL 3033960, at *2 (W.D.N.Y. Oct.  15, 2007).  Permanent injunctions have been granted under circumstances in which tavern owners like Defendants, after refusing to sign a licensing agreement for the performance of copyrighted musical compositions, provided a venue for a musical performance that included musical compositions within the licensing company's repertoire.  *See id*. (granting permanent injunction against defendant bar owners who permitted copyrighted music to be performed despite knowledge of such copyrights and repeated refusal to sign licensing agreement);and *Broadcast Music, Inc. v. Sonny Investment Associates, Inc.*, 865 F.Supp. 110, 114 (W.D.N.Y. 1994) (same).  *See also Barnaby Musci Corp. v. Catoctin Broadcasting Corp. of New York*, 1988 WL 84169, at * 3 (W.D.N.Y. Aug. 10, 1988) (granting permanent injunction against defendant radio station that, after being confronted with copyright infringing conduct, continued to remain unlicensed, establishing the threat of

continued copyright violations).

Nevertheless,

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that is has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("*eBay*") (considering whether to award permanent injunction in patent infringement case).

The same four factors articulated in *eBay*, have been applied by the Second Circuit in considering whether to grant a preliminary injunction in a copyright infringement action, with the court stating, in *dicta*, "nothing in the text or logic of *eBay* suggests that its rule is limited to patent cases.  On the contrary, *eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context."  *Salinger v.  Colting*, 607 F.3d 68, 77-78 (2d Cir.  2010) (citing cases whether the same four factors were applied by federal courts in considering whether to grant either preliminary or permanent injunctive relief).  Significantly, the Second Circuit instructed that an injunction may issue "only if the plaintiff has demonstrated that he is likely to suffer irreparable injury in the absence of an injunction . . .[and] [t]he court must not adopt a categorical or general rule or presume that the plaintiff will suffer irreparable harm."  *Salinger*, 607 F.3d at 80 (internal quotation marks omitted).  Here, the uncontroverted factual allegations of the Complaint to which Defendants have stipulated, along with other evidence in the record, establish that absent a permanent injunction, Plaintiffs will suffer irreparable injury, that cannot be compensate solely by

monetary damages, that a permanent injunction should be preferable to Defendants than being repeatedly subject to litigation for future violations, and that the public interest would not be disserved by enjoining Defendants from future conduct infringing on Plaintiffs' copyrights.

In particular, Defendants have infringed Plaintiffs' copyrights despite being repeatedly advised, since March 2002, by ASCAP of the need for a licensing agreement to be able to lawfully present live performances of musical compositions within ASCAP's repertoire, but that despite such notices, Defendants' permitted the band to perform three musical compositions in violation of the Act, documented by Plaintiffs and undisputed by Defendants, and that since being advised of such violations, Defendants have refused to sign a licensing agreement with ASCAP and continue to permit performances of copyrighted musical compositions without having obtained the necessary license, establishing the threat of continuing copyright violations.  Accordingly, the circumstances of this action support granting a permanent injunction against Defendants' public presentation of any musical compositions licensed through ASCAP because without such injunction Defendants who, to date, have steadfastly refused to execute a licensing agreement, will likely continue to permit public performances of copyrighted musical compositions within ASCAP's repertoire without the requisite license to do so. *Salinger*, 607 F.3d at 80   *See Broadcast Music, Inc.*, 919 F.Supp.  at 658 (granting plaintiffs in copyright infringement action permanent injunction where licensing company's investigator's testimony established defendants repeatedly infringed plaintiffs' copyrights despite knowledge of the copyrights, and continued to permit unauthorized public performance of copyrighted compositions

licensed through licensing company).

Plaintiffs' motion should be GRANTED as to the request for a permanent injunction.

**B.      Statutory Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  *See also Finkel v. Romanowicz*, 577 F.3d 79, 81 n. 1 (2d Cir.  2009) (defendant, by failing to oppose lawsuit, "is therefore deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability"); and *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young, Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.").  Once the procedural requirements for default judgment have been met, the well-pleaded factual allegations of the complaint are taken as true, except with regard to damages.  *Au Bon Pain Corp.*, 653 F.2d at 65 (holding once default was determined, "the court should have accepted as true all of the factual allegations of the complaint, except those relating to damages.").

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount."  *Greyhound Exhibitgroup*, 973 F.2d 158 (citing cases).  As relevant, Rule 55(b)(2)

provides "[th]e court *may* conduct hearings . . . when, to enter or effectuate judgment, it

needs to: (a) conduct an accounting; (B) determine the amount of damages; (C)

establish the truth of any allegation by evidence; or (D) investigate any other matter."

(italics added).   Nevertheless, the amount of damages to award in connection with a

default judgment may be decided by the court without a hearing.   *Transatlantic Marine*

*Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109 F.3d 105,

111 (2d Cir. 1997) (quoting *Fustock v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40

(2d Cir. 1989) ("it [is] not necessary for the District Court to hold a hearing, as long as it

ensured there was a basis for the damages specified in the default judgment.")).   *See*

*also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) ("not necessary for

the district court to hold a hearing to fix damages after a default judgment had been

entered where the court had 'relied upon detailed affidavits and documentary evidence

supplemented by the District Judge's personal knowledge of the record gained during

four years involvement with the litigation . . . .'" (quoting *Fustock*, 873 F.2d at 40 and

citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (no full

evidentiary hearing was necessary where district judge was "inundated with affidavits,

evidence, and oral presentations . . . ."))).   Here, the court finds the record contains

sufficiently detailed affidavits and evidence to permit a determination on willfulness and

damages without a hearing.

   Plaintiffs seek an award of statutory damages, pursuant to § 504(c)(1) in the

amount of $ 10,000 for each of the three copyright infringements, for a total of $ 30,000.

Plaintiffs' Memorandum at 9-12, 16.   Defendants argue in opposition that Plaintiffs

should not be awarded more than the minimum amount of statutory damages, *i.e.*,

$ 750 per violation, for each of the three copyright infringements, pursuant to §

504(c)(1), because the factual allegations do not support such an award and fail to

establish Defendants' infringing conduct was willful.  Okay Affirmation ¶¶ 10-37.  In

further support of entry of default judgment, Plaintiffs argue denying Plaintiffs statutory

damages would directly contradict the Stipulation, Plaintiffs' Reply at 2, that each of the

arguments advanced by Defendants in opposing the amount of statutory damages

Plaintiffs seek is without merit, *id*. at 2-4, that the record establishes Defendants are not

"innocent infringers," *id.*  at 4-6, and that the minimum statutory damages Defendants

urge the court to award would be inappropriate given the circumstances of the instant

case.  *Id*.  at 6-8.

Plaintiffs request that in lieu of actual damages and profits, statutory damages be

awarded pursuant to 17 U.S.C. § 504(c)(1) in the amount of $ 10,000 for each of the

three copyright infringements, for a total of $ 30,000 statutory damages.  As relevant,

17 U.S.C. § 504(c)(1) provides for the District Court, in its discretion, to award between

$ 750 and $ 30,000 for each copyright infringed.  *Island Software and Computer*

*Service, Inc.*, 413 F.3d 257, 262-63 (2d Cir.  2005) (citing 17 U.S.C. § 504(c)).  The

District Court may also, in its discretion, either "increase the award of statutory

damages to a sum not more than $ 150,000," or "[i]n a case where the infringer

sustains the burden of proving, and the court finds, that such infringer was not aware

and had no reason to believe that his or her acts constituted an infringement of

copyright . . .  reduce the award of statutory damages to a sum of not less than $ 200."

17 U.S.C. § 504(c)(2).  *See Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 143

(2d Cir. 2010) ("Pursuant to Section 504(c)(2) of the Copyright Act, an infringer's intent

can affect the amount of statutory damages awarded: only a minimal award may be warranted where the infringement is innocent; a higher award may be warranted where the infringer acted willfully.").

Although Defendants maintain they were innocent infringers, such that Plaintiffs should not be awarded more than the $ 750 minimum statutory damages permitted under 17 U.S.C. § 504(c)(1) for each of the three copyright infringements, Defendants do not seek further reduction in the amount of statutory damages to $ 200 as permitted under § 504(c)(2).  Nor do Plaintiffs seek an increase of statutory damages beyond the $ 30,000 based on willfulness.

Significantly, damages under § 504(c)(1), do not depend on a finding of willfulness.  *Island Software and Computer Service*, 413 F.3d at 265 ("Under the Copyright Act, there is no need for an infringer to act willfully for it to be sanctioned [under § 504(c)(1)].").  As such, Defendants' argument that they are innocent infringers is irrelevant to the awarding of statutory damages pursuant to § 504(c)(1).  This conclusion is consistent with Defendants' failure to argue for a reduction under § 504(c)(2) in the minimum damages to $ 200 for each of the three copyright infringements.  The court does, however, have "wide discretion in setting the statutory damage award anywhere between $ 750 and $ 30,000 for each work infringed."  *Id*.

"When determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct

and attitude of the parties."  *Bryant*, 603 F.3d at 144 (considering statutory damages to be awarded under § 504(c)(2), and citing *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)).  *See also Pearson Education, Inc. v. Arora*, 717 F.Supp.2d 374, 380 (S.D.N.Y. 2010) (considering same factors with regard to statutory damages awarded under § 504(c)(1)); and *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 914 (D.Conn. 1980) (factors to be considered in arriving at a determination of damages under 17 U.S.C. § 101(b) (predecessor statute to 17 U.S.C. § 504(c)(1)), include "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenue lost by the plaintiffs as a result of the defendants' conduct, and the infringer's state of mind whether wilful, knowing, or merely innocent.").

Here, Plaintiffs, despite offering no proof of actual damages, seeking instead statutory damages under § 504(c)(1), urge the court to award more than the statutory minimum of $ 750 for each of the three copyright infringements based on Defendants' conscious disregard of the Copyright Act, as evidence by Defendants' repeated refusal to execute a licensing agreement, and Defendants' continued public performance of copyrighted musical compositions without the requisite permission or license.  Plaintiff's Memorandum at 9-11.  Plaintiffs further maintain that had Defendants been properly licensed to perform the subject musical compositions, Defendants would have paid $ 10,877 for such license, such that an award of statutory damages in the amount of $ 10,000 for each of the three copyright infringements, for a total of $ 30,000, is warranted to sanction Defendants' failure to execute the licensing agreement and to deter Defendants' future infringing activity. *Id*. at 11-12.

Defendants urge the court to award Plaintiffs no more than the $ 750 minimum statutory damages for each of the three copyright infringements.  Okay Affirmation ¶ 35. In support of their request, Defendants maintain that (1) Plaintiffs failed to allege in the Complaint that Defendants derived any financial benefit from the three infringements, Okay Affirmation ¶ 10; (2) Plaintiffs seeks to hold Defendants vicariously liable based on the performance of the subject musical compositions by the band, which is not employed by Defendants, *id.* ¶¶ 19-24; (3) that insofar as Stars on the Water was performed on May 18, 2008, all food and beverages receipts generated during a benefit for the Diabetes Association were donated to the Diabetes Association, *id.* ¶¶ 24-25; (4) that Defendants signed the Stipulation to avoid being compelled to join the band as a defendant to this action, *id.* ¶ 26; (5) that ASCAP pressured Defendants to sign the licensing agreement in a "bizarre" and threatening manner, *id.* ¶¶ 27-29; (6) the licensing agreement Plaintiffs offered Defendants pertained only to jukebox performances, and no licensing agreement authorizing live performances at the Smokehouse was offered until after May 18, 2008, *id*. ¶¶ 30-31; and (7) characterize their admitted copyright infringements as "innocent," such that despite the "tactical withdrawal" of their Answer, Defendants have never expressly admitted to the willfulness of their actions and that willfulness is a legal conclusion that cannot be admitted through default.  *Id*. ¶¶ 33-37.  Each of Defendants' assertions in support of Defendants' request that only minimum statutory damages be imposed is without merit.

First, a plain reading of the Complaint establishes Plaintiffs alleged Defendants derived financial benefit from the three copyright infringements.  Complaint ¶ 5 (alleging Defendants derived financial benefit from the alleged copyright infringements).  Second,

although the subject musical compositions were performed by the band, rather than directly by Defendants, the Second Circuit has held that a defendant may be held liable for copyright infringement "if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Publishing Corp.*, 443 F.2d at 1162.  Significantly, Defendants, by executing the Stipulation, admitted that all Defendants "share joint responsibility for the control, management, operation and maintenance" of the Smokehouse, including the public performance of musical compositions.  Complaint ¶¶ 5-6.  Nor is there any merit to Defendants' assertion that insofar as Stars on the Water was performed on May 18, 2008, all food and beverages receipts generated during a benefit for the Diabetes Association held at the Smokehouse in the afternoon of May 18, 2008 were donated to the Diabetes Association.  Rather, the undisputed evidence in the record establishes that Stars on the Water was performed at 12:18 A.M. on Sunday, May 18, 2008,  *See* Jones Declaration ¶¶ 19-21 and Exh. D, which would have been prior to the Diabetes Associated benefit Defendants maintain took place in the afternoon of May 18, 2008.

Nor is there any merit to Defendants' suggestion that they signed the Stipulation to avoid being compelled to join the band as a defendant to this action.  Rather, as discussed, Discussion, *supra*, at 14, 24, Defendants, as owners of the Smokehouse with supervisory authority over all public performances of musical compositions, are jointly and severally liable for any copyright infringing activity at the Smokehouse. *Gershwin Publishing Corp.*, 443 F.2d at 1162.  If Defendants truly believed that liability for the copyright infringements was attributable solely to the Band, Defendants should not have executed the Stipulation.  Likewise if, as Defendants now contend, Okay

25

Affirmation ¶¶ 27-29,  ASCAP pressured Defendants to sign the licensing agreement in a "bizarre" and threatening manner, Defendants could have either commenced their own legal action, filed a criminal complaint complaining of harassment to put a stop to any conduct Defendants found objectionable, or defended this action on the ground of copyright abuse.  Moreover, a plain reading of Defendants' description of ASCAP's conduct in "pressuring" Defendants to execute the licensing agreement fails to establish, as Defendants maintain, that such conduct was either "bizarre" or threatening.  For example, Defendants' assertion that "[a] vice president of the corporate defendant received a telephone call at his residence from a purported ASCAP attorney threatening a lawsuit if the licensing agreement was not signed, Okay Affirmation ¶ 29.C., merely establishes ASCAP warned Defendants that their continued refusal to sign a licensing agreement would likely result in legal action against Defendants.  That such warning was not intended to unduly "pressure" Defendants into executing the licensing agreement but, rather, was truly meant to warn Defendants of the likely consequences of their continued refusal to execute the licensing agreement is evidenced by the fact that Plaintiffs filed the instant action.

Defendants' assertion that the licensing agreement Plaintiffs offered Defendants pertained only to jukebox performances, and no licensing agreement authorizing live performances at the Smokehouse was offered until after May 18, 2008, Okay Affirmation ¶¶ 30-31, is, at best, misleading.  Rather, the evidence establishes that in addition to offering Defendants licensing agreements pertaining to jukebox performances, ASCAP also offered Defendants licensing agreements pertaining to live performances.  *See*, *e.g.*, Draft General License Agreement - Restaurants, Taverns,

Nightclubs, and Similar Establishments, dated October 15, 2004, Jones Declaration, Exh. C at Bates Nos. 191-200 (copy of draft of General License Agreement dated October 15, 2004 which, if executed, would have granted Defendants' a license for public performances of musical compositions within ASCAP's repertoire, and cover letter from ASCAP to Defendants advising that Defendants were required to submit both the licensing fee and the executed licensing agreement to be licensed).

Finally, insofar as Defendants attempt to characterize their admitted copyright infringements as "innocent," rather than "willful, Okay Affirmation ¶¶ 33-37, no finding of willfulness is necessary to a damages determination under § 504(c)(1). *Island Software and Computer Service*, 413 F.3d at 265 ("Under the Copyright Act, there is no need for an infringer to act willfully for it to be sanctioned [under § 504(c)(1)].").

Accordingly, given Defendants' obstinate refusal to execute any licensing agreement, despite repeated invitations by ASCAP to do so, accompanied by unsolicited advice from ASCAP that the failure to execute the licensing agreement would likely result in liability under the Copyright Act, statutory damages in an amount greater than the statutory minimum are warranted.  In these circumstances, Plaintiffs' request for damages of $ 10,000 per copyright infringement for a total of $ 30,000, which is not quite three times the amount of licensing fees Defendants would have been required to pay had Defendants executed a licensing agreement, is reasonable.

On this record, it is recommended that Plaintiffs' be awarded statutory damages pursuant to § 504(c)(1) in the amount of $ 10,000 for each of the three copyright infringements, for a total of $ 30,000 in statutory damages.

### C.   Costs and Attorneys' Fees

Plaintiffs request an award of costs, including attorneys' fees, pursuant to 17 U.S.C. § 505.  Plaintiffs' Memorandum at 12-13. Defendants oppose Plaintiffs' request for an award of costs, including attorneys' fees, asserting that such costs cannot be awarded absent a finding that the copyright infringements were deliberate and willful, and that, in any event, the attorneys' fees requested are excessive.  Okay Affirmation ¶¶ 38-48.  Alternatively, Defendants request an evidentiary hearing to determine the issues of willfulness and costs, including attorneys' fees.  *Id*. ¶  49.  In further support of the request for costs, Plaintiffs argue the evidence in the record establishes Defendants' infringing conduct was willful, such that future infringing conduct will not be adequately deterred absent an award of costs and attorneys' fees.  Plaintiffs' Reply at 8-9.

In support of their argument that a finding of "willfulness" is a question of law which cannot be admitted through default, Defendants rely on *Van Limburg Stirum v. Whalen*, 1993 WL 241464 (N.D.N.Y. June 29, 1993), where the court stated that despite the requirement that as a result of the defendant's default, all of the complaint's well-pleaded allegation are deemed true "does not mean that liability is established merely because of the default, as a defendant cannot be said to 'admit' conclusions of law through default."  *Van Limburg Stirum*, 1993 WL 241464, at * 4 (citing 10 C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 445, 447).  The court continued that "[i]n other words, 'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Id*. (quoting *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d. 1200, 1206

(5th Cir. 1997)).  Accordingly, by admitting "liability as to all allegations in the Complaint," Stipulation at 1, given that the Complaint's well-pleaded allegations include that the copyright infringements to which Defendants admitted were made with knowledge and intent to violate Plaintiffs' rights, Complaint ¶ 13, Defendants did not necessarily also admit that the copyright infringements were willful, for which Defendants request an evidentiary hearing.

"It is plain that "willfully" infringing and "innocent intent" are not the converse of one another.  Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently."  *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).  Nevertheless,"just as the lack of actual or constructive knowledge will establish an innocent intent, so a defendant's actual or constructive knowledge proves willfulness."  *Id.*  *See also Twin Peaks Productions,Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (the standard for a willfulness determination "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." (citing *Fitzgerald Publishing Co.*, 807 F.2d at 1115)).  Although Defendants request an evidentiary hearing to determine whether Defendants' violation of the Copyright Act was willful, no hearing is necessary where the record establishes the infringement was willful.  *Barnaby Music Corp.*, 1988 WL 84169, at * 2 (W.D.N.Y. 1988) (denying defendant copyright infringers' request for evidentiary hearing for determination of question of willfulness because evidence established "without question . . . that the defendants' infringements were willful").

In the instant case, that ASCAP contacted Defendants more than 50 times in an attempt to have Defendants execute the licensing agreement that would have allowed Defendants to avoid this litigation, establishes Defendants willfully arranged for presentations at the Smokehouse of live performances of copyrighted musical compositions, including after ASCAP tendered back the money Defendants had submitted as payment of licensing fees, without also executing the licensing agreement. *See* Jones Declaration Exhs. A and B (copies of ASCAP's business records memorializing telephone conversations with Defendants regarding requests to have Defendants execute licensing agreement), and C (copies of letters from ASCAP to Defendants attempting to secure a fully-executed licensing agreement and warning of possible civil liability for performance of musical compositions without obtaining the requisite license).  For example, ASCAP's letters to Defendants specifically advised that Defendants had to execute a licensing agreement to perform copyrighted works within ASCAP's repertoire and that in choosing to "remain unlicensed . . . [Defendant] have persisted in willfully infringing on our [ASCAP's] members' copyrights."  ASCAP letter dated February 7, 2007, Jones Declaration Exh.  C at Bates Stamp No.  60.  ASCAP also provided Defendants with "a DVD-ROM containing a searchable list of ASCAP members and titles of many of the works in the ASCAP repertory." *Id*.  ASCAP further advised that if Defendants desired additional information about ASCAP's repertory, Defendants could write to ASCAP or visit ASCAP's website.  *Id*.  ASCAP concluded by offering Defendants the opportunity to avoid litigation by securing an ASCAP license before ASCAP referred the matter to its attorneys.  *Id*.  That ASCAP tendered Defendants' checks that were unaccompanied by the executed licensing agreement

back to Defendants shows ASCAP was serious about the need for the executed licensing agreement and, therefore, that Defendants were willful in brazenly ignoring ASCAP's admonitions.  Moreover, Defendants, in executing the Stipulation, admitted "liability as to all allegations contained in the Complaint . . . ."  Stipulation at 1.  As relevant, the Complaint alleges that "[i]n undertaking the [copyright infringing] conduct complained of in this action, Defendants knowingly and intentionally violated Plaintiffs' rights."  Complaint ¶ 13.

Significantly, Defendants offer no challenge to the evidence Plaintiffs submit on this issue, do not deny having received the letters and telephone calls, nor assert they were unable to determine whether any musical compositions performed at the Smokehouse were among the copyrighted works for which a licensing agreement with ASCAP was needed.

The plethora of attempts made by ASCAP to secure an executed licensing agreement from Defendants, along with Defendants' admission, by Stipulation, to "knowingly and intentionally" violating Plaintiffs' copyrights establishes, beyond question, that such copyright infringements were willful.  As such, Plaintiffs should be granted an award of costs, including attorneys' fees.

The Copyright Act contains a fee shifting statute, 17 U.S.C. § 505, permitting the district court, in its discretion, to award the prevailing party to recover the costs of the action, as well as a reasonable attorney's fee.  "The general purpose of fee-shifting statutes . . . is to permit plaintiffs with valid claims to attract effective legal representation and 'thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole.'"  *Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004)

(quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999)).  In the instant

case, Plaintiffs submit an itemized billing memorandum[2] establishing the costs and

attorneys' fees they seek to have awarded for this case.

For costs, which Defendants do not dispute, Plaintiffs seek a total of $ 1,996.24.

For attorneys' fees, Plaintiffs seek to recover the fees for two attorneys, Michael J.

Sciotti, Esq. ("Sciotti"), a partner in the Syracuse firm of Hancock & Estabrook, and

Robert C.  Whitaker, Esq.  ("Whitaker"), an associate with the same firm, as well as for

two paralegals, Mary Jo Guard ("Guard") and Linda McLean ("McLean").  In total,

Plaintiffs seek attorneys' fees of $ 35,204.00, for a total costs award of $ 37, 200.24.

Because Defendants do not dispute the amount of costs, and the amounts claimed are

reasonable, Plaintiffs should be awarded the $ 1,996.24 as claimed.  As such, the court

turns its attention to the amount of attorneys' fees for which Plaintiffs seek

reimbursement.

Traditionally, "in determining a fee award, the typical starting point is the so-

called lodestar amount, that is 'the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate.'"  *Healey v.  Leavitt*, 485 F.3d 63, 71

(2d Cir.  2007) (quoting *Hensley v.  Eckerhart*, 461 U.S. 424, 433 (1983)).  The Second

Circuit recently "undertook to simplify the complexities surrounding the attorney's fees

awards that had accumulated over time" in the district and circuit courts.   *Simmons v.*

*New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009).  In particular, the

Second Circuit sought to reconcile the lodestar method with the method, set forth in

---

[2] Sciotti Affidavit Exh.  A.

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson*

method"), and describing "a one-step inquiry that considered twelve specific factors to

establish a reasonable fee."  *Simmons*, 575 F.3d at 174 (citing *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 114 (2d Cir. 2007)

("*Arbor Hill*").  The Supreme Court, however, has since considered the issue of

attorneys' fees, approving the traditional lodestar method over the more subjective

*Johnson* method, explaining

> Although the lodestar method is not perfect, it has several important virtues.
> First, in accordance with our understanding of the aim of fee-shifting statutes, the
> lodestar looks to "the prevailing market rates in the relevant community."
> Developed after the practice of hourly billing had become widespread, the
> lodestar method produces an award that *roughly* approximates the fee that the
> prevailing attorney would have received if he or she had been representing a
> paying client who was billed by the hour in a comparable case.  Second, the
> lodestar method is readily administrable, and unlike the Johnson approach, the
> lodestar calculation is "objective," and thus cabins the discretion of trial judges,
> permits meaningful judicial review, and produces reasonably predictable results.

*Perdue v.  Kenny A.*, __ U.S. __, 130 S.Ct.  1662, 1672 (2010) (italics in original;
citations omitted).

Nevertheless,

> The lodestar methods was never intended to be conclusive in all circumstances.
> Instead, there is a 'strong presumption' that the lodestar figure is reasonable, but
> that presumption may be overcome in those rare circumstances in which the
> lodestar does not adequately take into account a factor that may properly be
> considered in determining a reasonable fee.

*Id*.  at 1673.

In calculating the lodestar amount, the initial burden is on the requesting party to

submit evidence supporting the number of hours worked and the hourly rate claimed.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The "lodestar" calculation should

exclude fees for work that is "excessive, redundant or otherwise unnecessary," as well

as hours dedicated to severable unsuccessful claims.  *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433-35).  To prevent the court from reviewing and ruling on each item for which reimbursement is requested, courts have permitted a percentage-based reduction from the number of hours submitted as a means of trimming excess time from the fee request.  *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (internal quotation marks and citation omitted); *see Walker v. Coughlin*, 909 F.Supp. 872, 881 (W.D.N.Y. 1995) (reducing by 15 % the total hours requested).  In the instant case, Plaintiffs seek reimbursement of attorneys' fees as follows:

| **Attorney**: | | **Sciotti**[3] | **Whitaker**[4] | **Paralegals** | | |
|---|---|---|---|---|---|---|
| Hourly Rate: | $ | 285 | 185 | 120 | | |
| Hours: | | 13.4 | 16.3 | 15.4 | | |
| Sub-Total: | $ | 3,819.00 | $ 3,015.50 | $ 1,848.00 | | |
| Hourly Rate: | $ | 300 | 195 | 120 | | |
| Hours: | | 34.8 | 68.4 | 12.2 | | |
| Sub-Total | | $ 10,440.00 | $13,338.00 | $ 1,464.00 | | |
| Total: | | $ 14,259.00 + | $16,353.50 + | $ 3,312.00 | = | **$ 33,924.50** |

---

[3] Sciotti's hourly rate was $ 285 in 2009, and $ 300 in 2010.

[4] Whitaker's hourly rate was $ 185 in 2009, increasing to $ 195 in 2010.

Although Defendants maintain that the hourly rates asserted by Plaintiffs are unreasonable, the court finds that the rates are in line with recent attorneys fees awarded by courts in this district.  *See, e.g., Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 2010 WL 3992215, at * 8 (W.D.N.Y. Oct.  12, 2010) ($ 355 hourly rate for senior partner); *Kimbach v.  Spherion Corp.*, 467 F.Supp.2d 323, 331-32 (W.D.N.Y. 2006) ($ 250 hourly rate for partners, $ 180 hourly rate for associates, and $ 100 hourly rates for paralegals).  Here, Sciotti is a partner with 20 years of experience, and Whitaker is a fifth year associate, and both of Plaintiffs' paralegals have worked in such capacity for more than 20 years.  Accordingly, the court does not adjust the hourly rates asserted, although the court finds some of the entries in the itemized billing memorandum Plaintiffs submitted in support of their request for attorneys' fees and costs should be either disallowed or discounted.

In particular, Plaintiffs seek to recover for attorneys' fees incurred in connection with pre-litigation matters, including last-ditch attempts to secure an executed licensing agreement from Defendants.  For example, on August 18, 2009, Sciotti and Whitaker each spent .10 of an hour receiving and reviewing a letter and licensing agreement from ASCAP's General Licensing Department Manager of Litigation Services Jones.  On August 19, 2009, McLean spent .7 hours "Draft[ing] pre-suit letters to Defendants." That the instant litigation was not commenced until October 9, 2009, and because it is not possible to tell from the itemized billing entries whether such work was required to either evaluate the case or in preparation for commencing litigation, such time should be disallowed.  Accordingly, the court should deduct $ 712.50 from Sciotti's fee, $ 388.50 from Whitaker's fee, and $ 108 from the paralegals' fee.

Plaintiffs seeks to recover for 22 hours spent by two attorneys traveling to and from Buffalo on April 16, 2010, to participate in mediation.  Plaintiffs may recover for hours spent participating in the court's ADR program.  *Serricchio v.  Wachovia Securites*, LLC, 706 F.Supp2d 237, 258-59 (D.Conn.  2010) (permitting attorneys' fees to be recovered for preparation and attendance at mediation); *Stirrat v. Ace Audio/Visual, Inc.*, 2007 WL 2229993, at * 6 (E.D.N.Y. July 31, 2007) (permitting attorneys' fees to be awarded for all efforts expended on pre-trial tasks, including, *inter alia*, mediation).  Nevertheless, why two attorneys were required for the mediation is not substantially explained by Plaintiff.  Accordingly, the court disallows the hours for Whitaker, for a deduction of $ 4,290.  Further, given that a trip from Syracuse to Buffalo by motor vehicle takes approximately 2 ½ hours, 5 of the 11 hours for which Plaintiffs' seeks reimbursement of attorneys' fees for Sciotti should be discounted by 50% for travel time between Syracuse and Buffalo.  *See Tiacoapa v.  Carregal*, 386 F.Supp.2d 362, 373 (S.D.N.Y. 2005) ("Courts in this Circuit regularly reduce attorney's fees by 50% for travel time.").  As such, Sciotti's requested fees are reduced by $ 750.

Nor is it clear to the court why Plaintiffs' attorney spent a total of 18.6 hours researching and preparing a two-page motion, supported by a three-page attorney affidavit, to appear in this action without local counsel, a matter which, for attorneys with the experience of Sciotti and Whitaker, surely was not complex.  *See* Doc. No. 11.  Granted, some of the entries pertaining to the motion also reference other tasks, *see*, *e.g.*, November 9, 2009 entry for Whitaker claiming 4.3 hours for reviewing Local Rule of Civil Procedure - W.D.N.Y. 83.2 requirement for local counsel, telephone conversation with law clerk regarding filing of motion to proceed without local counsel,

drafting of memorandum of law in support of motion to appear without local counsel, as well as reviewing unidentified electronic court filings notices). Where multiple tasks are combined into a single billing entry such that the court is unable to discern how much time was devoted to each task, the court may exclude the entry in its entirety. *Mautner v. Hirsch*, 831 F.Supp. 1058, 1077 (S.D.N.Y. 1993) (excluding in their entirety attorney fees requested for hours combined together in blocks without any breakdown as too vague), *aff'd*, 32 F.3d 37 (2d Cir. 1994). Accordingly, with regard to the entries pertaining to the motion to appear without local counsel, Sciotti's fee is reduced by $ 1,629.00, and Whitaker's fee is reduced by $ 2,435.50.

Allowing for the above deductions, Sciotti's fee is $ 11,167.50, Whitaker's fee is $ 9,239.50, and the paralegals' fee is $ 3,204, for a total of $ 23,611. The court, however, finds yet a further deduction is necessary to "trim the fat" to account for any further duplicity or work that could have been performed by paralegals, rather than attorneys, that may be impossible to discern based on the vagueness of entries. Rather than attempt to identify specific hours that should be eliminated for duplication of efforts or vagueness, and to account for those clerical tasks that could have been performed by paralegals, the court is permitted to make a simple reduction in the number of hours to "trim the fat." *McDonald*, 450 F.3d at 96 (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1988) (deducting a "reasonable percentage of the number of hours claimed" to account for "excessive, redundant, or otherwise unnecessary" hours)). *See New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a specific percentage

cut is "a practical means of trimming fat from a fee application.").

For example, on November 25, 2009, Sciotti claims 3.2 hours for "Work on Initial Discovery."  Similarly, on January 28, 2010, Sciotti claims another 3.0 hours for "Work of Initial Disclosures."  On February 16, 2010, Whitaker claims 3.5 hours for reviewing and editing initial disclosures, e-mailing Guard regarding the same, and e-mailing ASCAP attorney Andrew Schaffer regarding the settlement value of the case.  Another example is a curious entry dated October 12, 2009 for one "A.  Brown" seeking reimbursement for 1.4 hours of work for "review of file for purposes of disclosure statement."  Not only is "A.  Brown" not further identified, but no hourly rate for A. Brown is provided.

Further reducing by 10% the $ 23,611 in attorneys' fees remaining after the specific amounts disallowed leaves $ 21, 249.90, which the court rounds to $ 21,250 in attorneys fees.  Together with the undisputed costs of $ 1, 996.24, Plaintiffs should be awarded costs and attorneys' fees totaling $ 23,246.24.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for entry of a default judgment (Doc. No. 31), should be GRANTED; Plaintiff should be awarded statutory damages in the amount of $ 30,000, plus costs and attorneys' fees totaling $ 23,246.24, and a permanent injunction prohibiting Defendants from further copyright infringement should be GRANTED.

Respectfully submitted,

/s/ *Leslie G.  Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        April __18__, 2011
                    Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G.  Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        April 18 , 2011
                    Buffalo, New York